1

2

3

4                           UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    DMS DRYWALL & INTERIOR                    Case No.  23-cv-04743-WHO
     SYSTEMS, INC., et al.,

8                    Plaintiffs,               **ORDER GRANTING LEAVE TO FILE**
                                               **FIRST AMENDED ANSWER AND**
9            v.                                **COUNTER COMPLAINT**

10   PATRIOT CONSTRUCTION, et al.,             Re: Dkt. Nos. 26, 28

11                   Defendants.

12           Defendants Patriot Construction ("Patriot") and Fidelity and Deposit Company of

13   Maryland ("F&D") (together, the "defendants"), move for leave to file a First Amended Answer to

14   add a Compulsory Counter Complaint against Plaintiff DMS Drywall & Interior Systems, Inc.

15   ("DMS").   *See* Application for Leave to File a First Amended Answer and Counter Complaint

16   ("Motion" or "Mot.") [Dkt. No. 28-1].  DMS opposes because the motion is untimely under the

17   court's scheduling order and the defendants offer no valid excuse for their delay in requesting

18   leave to amend.  There is no need for further argument, and the hearing set for May 15, 2024 is

19   VACATED.  Good cause exists for the amendment, and DMS will suffer no prejudice from it.

20   Defendants' motion is GRANTED.

21                                   **BACKGROUND**

22           Patriot was hired by the Veterans Administration to construct a laboratory (the "Lab") in

23   San Francisco, California.  *See* First Amended Complaint ("FAC") [Dkt. No. 26-5] ¶ 7 (sealed).[1]

24

25   _____

26   [1] DMS requests leave to file a first-amended complaint to state an additional cause of action for
     violation of the False Claims Act arising from Patriot's alleged "misrepresentations concerning
27   payments made to DMS on the construction project at issue in the action." *See* Memorandum in
     Support of Application for Leave to File FAC Under Seal [Dkt. No. 26-1].  DMS's request is
28   GRANTED, as is its request to file the FAC under seal, as is required by the False Claims Act, 31
     U.S.C. § 3730(b)(2).

United States District Court
Northern District of California

1   Patriot then subcontracted with DMS for some of the work.  *Id.* ¶ 9.  The subcontract provided that

2   DMS would furnish and install framing, drywall, and other related work to the Lab for a contract

3   price of $1,274,067.00, subject to increase for extra work.  *Id.* ¶¶ 8-9; *see also* Declaration of D.

4   Ruiz ("Ruiz Decl.") [Dkt. No. 28-2] Ex. A (the Subcontract).  DMS alleges that it performed "all

5   obligations required to be performed by it under the Subcontract and under the Payment Bond,"

6   and that "all of the conditions precedent to performance on the part of Patriot and/or Fidelity have

7   occurred." FAC ¶¶ 34, 42.  It claims that the defendants have "failed and refused to perform their

8   obligations under the Payment Bond," resulting in DMS not being paid in full under the

9   Subcontract.  *Id.* ¶ 35.  It says that the defendants owe it at least $214,527.76 "for the value of its

10  labor, services, materials, equipment and supplies furnished by it to the Project." *Id.*

11      DMS filed suit on September 14, 2023, alleging three causes of action: (1) Recovery on the

12  Miller Act Payment Bond against Patriot and F&D; (2) Breach of Contract against Patriot; and (3)

13  Reasonable Value against Patriot.  *See* Complaint ("Compl.") [Dkt. No. 1].  It filed a first

14  amended complaint adding a cause of action for alleged violations of the False Claims Act by

15  Patriot.  *See generally* FAC.

16      The defendants claim that DMS failed to perform on its contract.  They seek to file an

17  amended answer and counter complaint asserting:  Breach of Contract, Breach of the Implied

18  Covenant of Good Faith and Fair Dealing, Breach of the Implied Duty to Perform with

19  Reasonable Care, and Declaratory Judgment.  *See* Defendants' First Amended Answer and

20  Counter Complaint [Dkt. No. 28-3].  The counter complaint is compulsory because it arises out of

21  the same transaction or occurrence as DMS's complaint, it does not seek to add another party to

22  the action, the claims are not pending in another action, and the court has already found that it has

23  jurisdiction over the defendants.  *See* Fed. R. Civ. P. Rule 13; *see also* Pl. Opposition to

24  Defendants' Application for Leave to File a First Amended Answer and Counter Complaint

25  ("Oppo.") [Dkt. No. 29] 6:14-15.

26

27

28

United States District Court
Northern District of California

2

**DISCUSSION**

**THERE IS GOOD CAUSE TO AMEND THE SCHEDULING ORDER UNDER RULE 16 AND ADD THE COMPULSORY COUNTER COMPLAINT TO THE ANSWER UNDER RULE 15**

**A.    Rule 16**

If a scheduling order has been entered, as is the case here, *see* Dkt. No. 22, Rule 16 mandates a showing of good cause for modifying the schedule.  Fed. R. Civ. P. 16(b)(4).   DMS opposes the defendants' motion because it is late-filed in violation of the court's scheduling order, and the defendants cannot show good cause under Rule 16 justifying this delay.  *See* Oppo. 11-16. The district court "is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (omission in original) (internal quotation marks omitted).

Patriot claims that at the time it filed its answer, it was "uncertain if its damages exceeded the amount of the final payment withheld from DMS" and that it did not want to "unnecessarily, or inappropriately file a counter claim." Ruiz Decl. ¶ 14.  It states that it "now knows the extent of its damages are far beyond the amount of the final payment and are not less than $305,000." *Id.*; *see also id.* Ex. G.  The underlying issue, whether as a set off or for damages, has been in the case from the outset, and the defendants point out that after the Early Neutral Evaluation Conference in March 2024, their counsel "requested DMS stipulate an order allowing Patriot leave to file a counter claim" but that DMS refused to do so.  Mot. 5; *see also* Ruiz Decl. ¶¶ 7, 14; *see id.* Ex. G. In light of those facts and the ones I discuss below in consideration of the good cause standard under Rule 15, there is good cause to modify the scheduling order.[2]

---

[2] After filing their Reply, the defendants filed a Motion to Withdraw their Application for Leave to File a First Amended Answer and Counter Complaint.  *See* Dkt. No. 32-1.  The defendants explained that they had filed their reply brief under the impression that DMS had not filed an opposition to their motion; as a result, they did not directly respond to DMS's Rule 16 argument. Because I am granting the defendants' motion to amend despite their oversight, I DENY their motion to withdraw as moot.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.    Rule 15

Under Rule 15, parties are entitled to amend pleadings once within 21 days of service; beyond that, a party can only amend its pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(2).  Courts are encouraged to "give leave when justice so requires," *see id.*, and courts' discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  In exercising its discretion "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Id.*  Leave is not granted automatically, and a trial court may deny it if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (listing these factors among others to be considered). Prejudice to the opposing party is the most important factor. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971).  And delay by itself is "insufficient to justify denial of leave to amend." *See DCD Programs*, 833 F.2d at 186.

DMS argues that because the counter complaint arises from the "same set of facts" as DMS's original claims, of which the defendants have been aware for over a year, I should deny the defendants' request as untimely.  *See* Oppo. 13-14.   It argues that "[the] [d]efendants knew they had incurred 'not less than $305,430' in remediation costs well before the deadline to amend the pleadings." Oppo. 15; *see also* Proposed Counter Complaint [Dkt. No. 28-3] ¶¶ 12-13.

The defendants respond that they did not know the amount of their damages when they filed their Answer in October 2023.  *See* Mot. 4:22-5:2 ("At the time Defendants filed their answer they were still in the process of determining the extent of the damages they incurred on the Project due to DMS's failure to perform, and if those damages exceeded the amount of the final payment that would have been due to DMS . . . and thus, if the damages could be dealt with as an offset."). They attribute their delay in filing the counter complaint to "not want[ing] to file a counter complaint unnecessarily or inappropriately." *See id.* 5:2-3.

Regardless of when the defendants knew definitively what their remediation costs were, it

is in the interest of justice to allow them to file their compulsory counterclaims now. The risk of prejudice to DMS is low because the counter complaint arises from the same set of facts as DMS's claims against the defendants: It will not require DMS to commence or defend against new or burdensome discovery. The defendants do not seek to add additional parties to the litigation. And res judicata will foreclose Patriot from pursuing these claims if it is not allowed to add them. Discovery does not close for another three months. If DMS requires more time to address the counterclaims, it may request it from the court; it does not seem likely that it will. All of these facts distinguish this case from the ones DMS cites where leave to amend was denied because of the risk of prejudice to the non-moving party. *See e.g.*, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend denied where two years had passed since the initial complaint was filed and where the new claims "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense."); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (leave to amend denied where the proposed additional claims would "advance different legal theories and require proof of different facts" and where the moving party informed the court of their intention to file an amended complaint three times but failed to do so until over a year after their first notice of intent); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566-67 (9th Cir. 1994) (leave to amend denied where the moving party sought to add a defendant to the case after the district court had already issued its judgment, and sought to allege a new cause of action against that new defendant).

This case is just getting started and involves a limited set of facts and questions. There is good cause to amend the scheduling order and add the compulsory counterclaims, and DMS will not suffer prejudice from the modification.

### CONCLUSION

The defendants' motion is GRANTED.

**IT IS SO ORDERED.**

Dated: May 13, 2024



William H. Orrick
United States District Judge